UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC GLENN VALLES, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 2:22-cv-00200-JHE |
| TREVOR ALLEN MARLER, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Eric Glenn Valles ("Valles") filed this action on February 15, 2022, asserting two state law claims against defendant Trevor Allen Marler ("Marler") — Count 1: Negligence and Count 2: Wantonness, both based on a motor vehicle collision. (Doc. 1). Valles alleges that on September 27, 2020, he and Marler were involved in a traffic collision — Marler in a Nissan Sentra and Valles on a Harley Davidson motorcycle. (Doc. 1; *see* doc. 24 at 2). Valles alleges Marler negligently and/or wantonly ran a red light and caused the collision. (*Id.*). Valles further alleges he suffered "personal injuries" as a result of the accident. (*Id.*).

Marler has filed a renewed motion to dismiss this action for lack of subject-matter jurisdiction. (Doc. 26). Valles opposes that motion (doc. 45), and Marler has filed a reply brief in support of dismissal (doc. 46). For the reasons discussed further below, Marler's motion is **GRANTED**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 14).

1

## I. Procedural History

On November 11, 2022, Defendant Marler moved to dismiss the complaint for, *inter alia*, lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, alternatively, for an opportunity to conduct limited jurisdictional discovery. (Doc. 19). After receiving briefing on the motion, on January 9, 2023, the Court granted Marler's request for jurisdictional discovery. (Doc. 24). The parties conducted jurisdictional discovery through February 21, 2023. (*Id.*).

On March 3, 2023, defendant Marler renewed his motion to dismiss Valles' complaint for lack of subject-matter jurisdiction. (Doc. 26). Valles filed a response brief in opposition (doc. 45), and Marler filed a reply brief (doc. 46). The Court then entered an order, again explaining the relevant law as well as its understanding of the facts. (Doc. 47). In this order, the Court noted that it found some of the evidence to be unclear and set the motion for an in-person evidentiary hearing to facilitate determining whether the Court has subject-matter jurisdiction in this case. (*Id.*). On May 5, 2023, the Court held an evidentiary hearing, receiving evidence and hearing arguments from counsel for both parties and receiving testimony from Valles.

For the reasons stated below, the second motion to dismiss for lack of subject-matter jurisdiction (doc. 26) is **GRANTED**.

## II. Analysis

As thoroughly discussed in the Court's previous orders (docs. 24 & 47), the parties dispute whether the Court has subject-matter jurisdiction. Subject-matter jurisdiction is generally based on (1) a federal question or (2) diversity of citizenship. *See* 28 U.S.C. §§ 1331, 1332. Here, there is no federal question at issue, so the Court is concerned only with diversity of citizenship. Pursuant to 28 U.S.C. § 1332(a)(1), a district court has original jurisdiction when the matter in controversy

exceeds the sum or value of $ 75,000.00 and the parties are citizens of different States. This "diversity of citizenship" **must** have existed when Valles filed his complaint on **February 15, 2022**. *See PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016) (noting that diversity jurisdiction is measured at the time the action is filed).

Challenges to subject-matter jurisdiction can be facial or factual, and this is a *factual* challenge. Therefore, "the district court is not obligated to take the allegations in the complaint as true." *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). Instead, the Court "may consider extrinsic evidence such as deposition testimony and affidavits." *Id.* From this evidence, the Court may "independently weigh the facts, and is not constrained to view them in the light most favorable to the non-movant." *Id.*

Marler contends Valles cannot present sufficient evidence to establish that he was *in fact* "domiciled" in Tennessee when he filed the complaint, and thus Valles cannot establish subject-matter jurisdiction in federal court. (Doc. 19 at 7-15). In response, Valles maintains that he was and is a citizen of, and domiciled in, Tennessee. (Doc. 21 at 5-10; doc. 21-1; doc. 45).

### A. Legal Framework

As the Court has explained, to be a citizen of a state for the purpose of determining citizenship under 28 U.S.C. § 1332(a), "a natural person must be both a citizen of the United States and a domiciliary of that State." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (citation omitted). Furthermore, "for the purposes of diversity jurisdiction, 'citizenship means domicile.'" *Estate of Rivas v. Gallegos*, No. 7:11-cv-02214-RRA, 2011 WL 13234408, at *4-5 (N.D. Ala. July 19, 2011). Importantly, "[d]omicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011). "Although physically present in the current

3

residence, the person does not intend to remain in that state indefinitely." *Id.* at 1342. A party can have only "one domicile at a time." *Comm'r v. Estate of Sanders*, 834 F.3d 1269, 1279 (11th Cir. 2016).

Courts in the Eleventh Circuit generally apply shifting burdens to determine domicile. *See e.g., Sprinkle v. Johnson*, No. 07–0713–WS–B, 2007 WL 4533046, at *3–4 (S.D. Ala. Dec. 19, 2007). The plaintiff, or the proponent of the court's jurisdiction, bears the initial burden of establishing diversity of citizenship. *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir.1966). "However, once a plaintiff shows a former domicile, 'the presumption is that it continues to exist,' and the burden shifts to the defendant to present evidence that the domicile changed." *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir.2007) (quoting *Slaughter*, 359 F.2d at 955). The defendant can rebut this presumption by, for example, introducing evidence that the plaintiff lived elsewhere when he filed the complaint. *Id.*

A court takes numerous factors into consideration when determining domicile, including, but not limited to the following:

> location of employment; home ownership and ownership of other real property; location of one's household furnishings; registration and title to one's automobiles; driver's licensing; voter registration; payment for utilities; banking; acquiring a telephone number and listing it; receiving mail; and establishing membership in local professional, civic, religious, or social organizations.

*Estate of Rivas*, 2011 WL 13234408 at 4 -5 (quoting *Rayfield v. National Auction Group*, 878 F. Supp. 203, 206 (M.D. Ala. 1995). A court must examine these factors with a "totality of the evidence approach." *Audi*, 273 F. Supp. 2d at 1226-1227; *McDonald v. Equitable Life Ins. Co.*, 13 F. Supp. 2d 1279, 1281 (M.D. Ala. 1998).

### B. Evaluation of the Relevant Factors

The court evaluates these factors with a totality of evidence approach and focuses on Valles' domicile on **February 15, 2022**, the date he filed this case. The evidence shows that Valles has maintained certain state licenses and registrations in Tennessee. Specifically, Valles' automobile titles and registrations are in Tennessee. He also has a Tennessee driver's license and is registered to vote in Tennessee. Valles maintains a joint bank account with his wife, Angela Lane Valles, at a Tennessee bank[2] and rents an apartment/house in Tennessee, also with his wife. At the hearing, Valles explained he was born in California and raised in Cordova, Alabama. At some point around 2008 to 2010, Valles and his wife moved to Sevierville, Tennessee and rented a residence. Valles further testified that around 2016 or 2018, he returned to Cordova, Alabama to help care for his sick parents for "a couple of years," but did not intend to stay in Cordova. During this time, Valles took several jobs in Alabama. However, after his parents passed away, Valles did not physically return to Sevierville, Tennessee (or any other city in Tennessee). In fact, Valles testified that he has not spent the night at the Sevierville residence since he moved back to Alabama years ago.

Evidence available prior to, as well as evidence acquired during, jurisdictional discovery, shows that Valles has many meaningful contacts with Alabama. Valles works in Alabama much of the time and owns houses and real property in Alabama. (*See* docs. 32, 33). Valles also makes utility payments related to those Alabama properties. (*See* docs. 36, 39). He has a personal bank account at Synovus in Alabama and has an Alabama mailing address. (Doc. 39 at 53-60). Valles' Facebook profile, which he frequently updated throughout the relevant period, listed his "Current City" as Cordova, Alabama, until after Marler's attorney pointed this out in their briefing. (Doc.

---

[2] Valles testified at some point years ago, he was added to his wife's bank account.

5

29). All of Valles' reported medical visits for the past five years have been in Alabama. (Docs. 30, 28).

Additionally, a review of Valles' jobs from January 2017 to the present shows that, even after his parents died, Valles did not return to Tennessee, but continued to work several jobs in Alabama, as well as other jobs across the country, but did not take any jobs in Tennessee. (Doc. 36 at 5). Valles testified that after working jobs in Ohio and other northeastern states, he would fly back to Birmingham, Alabama airport — not Tennessee. Records indicate Valles' medical doctors and pharmacists are all in and around Cordova, Alabama. (*See e.g.,* doc. 19-4; doc. 19-5). Notably, the only job Valles worked in Tennessee began in May 2022, ***after*** he filed this case, and Valles testified that, during this job, he stayed in Athens, Alabama — not in Tennessee. (Doc. 36 at 5).

When asked to produce any lease agreements for the last five years, Valles only produced the Sevierville lease from 2011, at the hearing. (Doc. 50-1). Further discovery requests revealed that Valles' wife makes the lease payments by check from the USSA bank account — an account in which she is the primary account holder. (*See* doc. 50-6). At the hearing, Valles testified that the USSA bank account was his wife's account, but he was added to the account sometime around 2006 or after. When purchases have been made from both Tennessee and Alabama on the same day, Valles confirmed that it was his wife making the purchases in Sevierville, Tennessee, and he was making the purchases somewhere else.

At best, Valles suggested that he intended to return to Tennessee at some unspecified time. It is well-established that this type of vague or "'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983); *see also Gilbert v. David*, 235 U.S. 561, 570 (1915) (holding that party acquired new

domicile when he moved there with his family and purchased a home, owned other real estate there, and spent ten years there without returning to his previous domicile "except for a short time, and then for a temporary purpose"); *Gates v. C.I.R.*, 199 F.2d 291, 294 (10th Cir. 1952) ("If a person has actually removed [himself] from one place to another with an intention of remaining in the latter for an indefinite time and as a place of fixed present domicile, such place will be deemed his place of domicile, notwithstanding he may entertain a floating intention to return to his previous domicile at some future time."); *Eastep v. Newman*, No. 1:12-cv-102 (WLS), 2013 WL 1721609, at *5 (M.D. Ga. Apr. 22, 2013) (finding that plaintiff's "floating intention or vague desire to relocate" could "not defeat a finding of domicile"). Notably, during the hearing Valles testified that, although he has been to the residence a few times, he has not spent the night at the Sevierville dwelling since before 2022. Valles further testified that he has periodically met his wife in Mississippi to work on another rental property.

After reviewing the parties' arguments, as well as the documentary and testimonial evidence, the Court simply cannot find that, when he filed this case, Valles had been physically present in Sevierville or any other city in Tennessee for years, much less had an intention to remain there. When Valles returned to Cordova, Alabama between 2016 and 2018, he reestablished his domicile in Alabama with his physical presence and by repeatedly returning. Although he testified that he intended to return to Sevierville someday, that "floating intention" to return does not prevent the creation of his domicile in Alabama. *Gilbert*, 235 U.S. at 569.

### III. Conclusion

In summary, the Court finds Valles was an Alabama citizen when he filed this lawsuit. Because the parties are not domiciled in different states, the Court does not have diversity of citizenship jurisdiction over this case. Thus, Defendant Marler's renewed motion to dismiss (doc.

26) is **GRANTED**.  A separate order will be entered.

      DONE this 21st day of June, 2023.

                                      **JOHN H. ENGLAND, III**
                                      UNITED STATES MAGISTRATE JUDGE